COLE, Circuit Judge,
dissenting.
I disagree with the majority’s conclusion that this case should be dismissed pursuant to Rule 12(b)(6). The majority’s opinion misreads the statutory scheme — which, if read correctly, illustrates that the letter sent to the plaintiffs was misleading, and that paying the fee was in no way an alternative to criminal prosecution.
The majority asserts both that the plaintiffs could have been heard through the *606 criminal justice system if they had refused to pay the fee, Op. at 605 (stating that “had plaintiffs failed to pay the assessment fee, they would have been entitled to the full panoply of due process protections when and if the County instituted a criminal action to collect the fee”), and that, as a corollary, “the County has implemented a system which permits check writers to take corrective action without criminal sanctions.” Op. at 605. The majority is wrong to view the collection process as an alternative to the criminal process. Although CEU’s letter suggests that this is the case, the relevant Michigan statute and the Grand Rapids Ordinances mentioned by the majority say otherwise.
The Michigan Penal Code criminalizes uttering bad checks with the intent to defraud. M.C.L.A. § 750.131. Bad checks uttered for less than $100 are punishable by up to 93 days in jail and a fine not to exceed $500. M.C.L.A. § 750.131(3)(a)(i). The punishment for larger checks and subsequent offense ranges considerably higher. M.C.L.A. § 750.131(3)(a)(ii)-(c).
Aside from this criminal scheme, Michigan law provides a specific civil cause of action to payees who have received bad checks. M.C.L.A. § 600.2952. This cause of action is “[i]n addition to applicable penal sanctions.” M.C.L.A. § 600.2952(1). It makes a bad check writer liable for the amount of the check, plus a $25 processing fee, civil damages, and costs. Id. Unlike the criminal statute, this civil statute does not have an intent requirement. The statute further authorizes the payee or an agent of the payee to send a demand for payment of the check and the processing fee. M.C.L.A. § 600.2952(2).
Indeed, M.C.L.A. § 600.2952 provides the “text of the written demand,” and this text differs significantly from the letter sent by CEU. The text in the statute makes it crystal clear that repaying the check and paying the processing fee will settle civil liability:
‘A check, draft, or order for payment of money drawn by you for $_ was returned to me/us/our client (client’s name) dishonored for:
[ ] Insufficient funds
[ ] No account
This notice is a formal demand for payment of the full amount of the dishonored check, draft, or order plus a processing fee of $25.00 for a total amount of $_[I]f you pay this total amount within 7 days, excluding weekends and holidays, after the date this notice was mailed, no further civil action will be taken against you.
If you do not pay the $_as requested above, but within 30 days after the date this notice was mailed you pay the amount of the dishonored check, draft, or order plus a $35.00 processing fee, for a total amount of $_, no further civil action will be taken against you.
If you fail to pay either amount indicated above, I/we/our client will be authorized by state law to bring a civil action against you to determine your legal responsibility for payment of the check, draft, or order and civil damages and costs allowed by law.
If you dispute the dishonoring of this check, draft, or order, you should also contact your bank or financial institution immediately.’
M.C.L.A. 600.2952(2). Of course, in the typical context, a sender of this letter is a private payee, not constrained by due process requirements. But, even if sent by a government entity, this letter indicates that the failure to pay will result in a hearing- — a civil action- — before a deprivation occurs.
*607 The Grand Rapids Ordinances cited by the majority track the structure of the Michigan statute. Ordinance No. 348 criminalizes uttering bad checks and provides criminal penalties, akin to M.C.L.A. § 750.131. And, like M.C.L.A. § 600.2952, Ordinance No. 349 provides for non-criminal check collection. According to Ordinance No. 349(c), the “expense of a dishonored check response” constitutes “a debt of that person and is collectable by the Charter Township of Grand Rapids and the County of Kent in the same manner as in the case of an obligation under a contract, expressed or implied.” In the event of a failure to pay the expenses of a dishonored check response, “the Charter Township of Grand Rapids or the County of Kent may commence civil suit to recover the expenses and any costs allowed by law.” Ordinance No. 349(e) (emphasis added). The Grand Rapids Board set the “expense of a dishonored check response” at $25 in a May 6,1997, Resolution.
Had CEU sent the letter provided in the Michigan statute or something similar to it, I would be inclined to think that no due process violation occurred. I would agree that the check writer voluntarily paid the processing fee and waived his or her right to a civil hearing by choosing to resolve the dispute prior to a civil action. Yet, the letter provided by CEU nowhere indicates that payment settles civil liability authorized by state law or contract liability created by city ordinance, or that — more importantly — paying the fee in no way precludes a criminal prosecution. CEU’s letter, which appears on the letterhead of the Kent County Sheriff Department, states that:
Violations of the check law are administered for the Police/Sheriffs Department by [CEU]. Repayment of the check(s) plus the bank fee and government assessment -fee is required. Should you have any questions regarding this letter or the amount due, please feel free to call: [phone number].
In fact, under neither the state statute nor the city ordinance are the fines being administered for the “Police/Sheriffs Department.” Under the Michigan statute, the violations are being administered for the payees — not the police — by CEU, albeit with County facilitation and County collection of the processing fee. Under the city ordinance, the fines are being administered on behalf of the “Township Supervisor.” Ordinance No. 349(e). Repayment of the processing fee is not “required”; it is a civil liability and/or contract obligation that, if not voluntarily paid, must be grounded in a civil action. Finally, the notice states: “FAILURE TO MAKE PAYMENT CAN RESULT IN A WARRANT FOR YOUR ARREST.” Such a notice can easily mislead a reader into believing that the notice and fee are an alternative to criminal proceedings rather than civil proceedings.
With this background in mind, I turn to the alleged due process violation. Our first question is: Were the plaintiffs deprived of property when they paid the $25 fee to the County? I conclude that they were, because, although they voluntarily paid the money, they were misled about the nature and consequences of their payment. In Herrada v. City of Detroit, 275 F.3d 553, 557 (6th Cir.2001), we held that such a payment could be a deprivation for due process purposes:
Herrada contends that the City interfered with her property interest by making false and misleading statements in the citation and overdue notice she received. If these notices failed to comport with the requirements of procedural due process, the City arguably violated Herrada’s rights, because she paid her fines only after receiving the no *608 tices. We must therefore determine whether the notices that she received were constitutionally sufficient.
Here, the letter from CEU informed the plaintiffs that payment “was required,” and the letterhead and portions of the letter imply that paying the fee would stave off prosecution, which is not the case. The letter certainly did not inform the check writers that the fee was a civil liability and that paying it forfeited the right to challenge the fee in a civil proceeding, as the state mandated letter does. In sum, CEU and the County sent out letters that misinform the recipients of the nature and consequences of payment of the $25 fee, and the plaintiffs who paid the fee on that basis were deprived of their property.
Having concluded that plaintiffs have alleged a deprivation, I turn to whether the procedures accompanying that deprivation were insufficient. As the majority notes, the essential elements of due process are notice and an opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The majority concludes the letter provided adequate notice even though it concedes that the letter “did not inform the check writers of the availability of a hearing or the procedure for requesting one,” Maj. Op. at 604, because the notice provided a phone number for “any questions regarding this letter or the amount due.” The majority cites no authority for the proposition that a notice that does not indicate that the recipient has any right to dispute the fee, and in fact states that payment “is required,” is sufficient. In our most analogous case, Herrada v. City of Detroit, this Court concluded that notice was sufficient because “the citation clearly states that a hearing is available to contest the City’s allegation,” adding that “the citation and overdue notice also provide telephone numbers to call for more information.” Herrada, 275 F.3d at 557 (emphasis added). The case cannot be read to indicate that providing a phone number alone is enough. Indeed, in considering the impact of potentially misleading statements, the Herrada Court explicitly noted that the statements did not render notice insufficient because they “do not raise doubts about an owner’s ability to contest the allegations in a hearing, or about the result of paying the fine and thereby waiving a hearing.” Id. at 558. In this case, the check writers were never informed of their right to a hearing, the results of paying the fee, or the resulting waiver of a hearing. Further, in addition to not giving notice, the statements which suggest that the fee was related to criminal proceedings affirmatively lead a reader away from the conclusion that check writers may challenge their liability for the processing fee in civil court.
Even if the letter gave proper notice, it cannot be said at this stage of the litigation that plaintiffs had an opportunity to be heard. There are three potential opportunities to be heard in this case: the phone number provided by CEU, a criminal proceeding, or a civil proceeding. There is no indication that a check writer could challenge the fee in a criminal proceeding — at a criminal proceeding, the burden of proof is different and there is an intent element required for criminal conviction that is not required under M.C.L.A. 600.2952 for collection of the fee. The defendants likewise cannot claim that these plaintiffs could have contested the fee in a civil proceeding, because the letter certainly did not give notice that such a thing existed. That leaves the phone number. We simply do not know whether it is true that a check writer who calls this phone number can dispute the fee. This case comes to us on a Rule 12(b)(6) motion. All that is in the record is the complaint and the letter sent *609 by CEU, attached to the complaint. Thus, we know that the plaintiffs allege in their complaint that the County does not provide an opportunity to be heard and that the letter sent by CEU includes a phone number. We do not know what happens when a check writer calls this phone number. We do not know whether the other side of the line provides a procedure for challenging the bad check determination, a computerized menu, or a perpetual busy signal.
Due process is a flexible context. Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Procedure may not have to be elaborate in a case like this where the property interest is small, but there has to be some kind of notice and some kind of hearing. For purposes of Rule 12(b)(6), the plaintiffs have sufficiently alleged a due process violation.
I am not unmindful of the majority’s concerns for the added administrative costs of “[rjequiring the County to implement additional procedures.” Op. at 605. Yet, I believe that the due process concerns could be alleviated by using the text of the letter in the Michigan statute. Using a clear and informative letter instead of a misleading and/or false one would be of little cost to the County. Payments made in response to a proper letter would not be deprivations. Check writers who choose not to voluntarily pay would have notice and a right to be heard in civil court. The County has no legitimate interest in maintaining the text of a misleading letter.
I cannot say that plaintiffs have failed to state a claim, and I therefore respectfully dissent.